Don Reid SWITZER et al., Appellants,

v.

Christine B. JOHNSON et al., Appellees.

No. 15338.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Sept. 26, 1968.

Landis, Gregory & Mullins, Cullen H. Landis, Houston, for appellants.

W. Douglas Matthews Petty & Lively, Victor M. Petty, Houston, for appellees; Carroll, Matthews & Wilatt, Houston, of counsel.

George L. Schmidt, C. Ed Carrithers, Houston, for intervenor Transcontinental Ins. Co.

PEDEN, Justice.

Appellees filed this suit under the wrongful death statute as a result of the loss of Mr. E. D. Johnson, a pedestrian, who was struck by a pickup truck driven by one of the defendants. This appeal is from a judgment for appellees based on a jury verdict.

The accident occurred on August 11, 1964, on highway F. M. 528 just north of Clear Lake at a point near the intersection of Bayou View Drive with the highway. Bayou View does not cross F. M. 528, but runs only in a northerly direction from the intersection. At the intersection, F. M. 528 runs generally east and west.

At the time of the accident Mr. Johnson was employed by a construction company building a service station on the northwest corner of the intersection in question and was out in the highway helping a surveyor determine the elevation of the highway so as to plan the elevation of the driveways for the station.

There is a gentle curve in the highway near the intersection, but it is uncontroverted that visibility was about half a mile as the truck approached.

Appellants' first point states that appellees' counsel informed or implied to the jury in his questioning of Mr. Don Robert Switzer and Mr. L. P. Sandusky that criminal charges had been brought against appellant Don Robert Switzer as a result of the accident made the basis of this suit.

Appellants allege that the trial court had granted appellees' motion in limine thereby requiring that permission be obtained from the trial court before appellees might show before the jury that Don Robert Switzer had been charged with a criminal offense as a result of the accident. The motion did not so provide, and the court did not so rule. Appellants point out that appellees asked the first witness, appellant Don Robert Switzer, whether he was still with the investigating officer after they left the scene of the accident and whether the officer questioned him after they left the scene. Appellants also complain that appellees brought out that Don Robert Switzer was in the office of a Justice of the Peace when he talked to his lawyer that afternoon, but there is nothing in the record to show that appellees' counsel knew where young Switzer had been or that he would give such answer when asked where he was at that time.

Appellants' counsel asked the sergeant of the Highway Patrol whether Don Robert's father had arrived as of the time he left the scene of the accident. The answer was: "I believe about the time I left the La Porte Police Station I believe his father had just arrived. * * *"

Appellees' counsel later asked a witness, "Mr. Sandusky, you weren't with Officer Bobbie Maynard when he was talking to Don Robert Switzer later on over at Seabrook or La Porte or any of those places, were you?"

■ In the trial of a civil negligence action arising from an auto accident, it is improper to show that an investigating officer has or has not filed criminal charges

or given a traffic ticket as a result of that accident. To hold otherwise would be to permit the jury to consider extra-judicial conclusions which are based on penal provisions, which apply a different yardstick from that used in determining civil fault.

■ In this case there was no clear showing of the filing of charges or the giving of a traffic ticket. No objection was made to any of the questions or answers complained about; no motion was made to strike any of them and no motion for mistrial was based on them. We overrule appellants' first point.

■ "It should be enough to preserve the question for counsel to object to improper conduct and for the court to give an instruction to the jury, in language as strong as the nature of the misconduct requires, not to consider it for any purpose or let it affect the verdict." Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277, 280 (1958).

Appellants' second point asserts that in his jury argument counsel for appellees implied that criminal charges had been filed against Don Robert Switzer, and their third point complains that an offer was made by appellees' counsel during argument to present the entire police records of an officer after the trial court had ruled them inadmissible.

A bill of exception reflects that appellants' counsel argued to the jury "in the following words or to this effect:

" 'Now, you remember, ladies and gentlemen of the jury, when Mr. Matthews made his big play for Mr. Sandusky's statement. You remember that I gave that statement to Mr. Matthews and he read it for a long time before he continued to question Mr. Sandusky. And I am sure you remember that when Mr. Matthews wanted to get parts of Mr. Sandusky's statement in evidence we objected to that, but we offered in open court to let Mr. Sandusky's whole statement go before the jury if Mr. Matthews would agree to that.' "

In his final argument appellees' attorney said in discussing decedent's lookout:

"What is the evidence on that? Do we have any evidence that Mr. Johnson ran? The only evidence is this Mr. Sandusky that he was standing still and was standing still when he was hit, that he was standing still doing some measurement up to the time he was hit. Now, he told these people about that in this statement you heard except when I wanted to get it in he didn't want the officer's whole statement to go before the jury. I will make this trade with them, I will let it all go in if they will let all of Officer Maynard's record go in."

Appellants made no objection during appellees' jury arguments but did move for a mistrial at the conclusion of them, basing their motion on the points just stated.

■ Appellants' third point is largely directed to the same jury argument, but is based on the inaccurate premise that the trial court had ruled some of the police records inadmissible. The court had not done so, but appellees' counsel was in effect suggesting that there were more than had been offered. Appellees concede that the quoted argument was improper, but contend that it was invited and was waived by appellants' failure to object or request an instruction from the trial court. We agree with all three of these assertions by appellees. Though improper, the offer was invited and appellees were entitled to reply. Ft. Worth & Denver Ry Co. v. Coffman, 397 S.W.2d 544 (Ft. Worth Tex.Civ.App. 1965, writ dism.). After reviewing the entire record of this case, we hold that the argument in question was not so prejudicial that an improper judgment would probably have resulted even if an objection had been made and an appropriate instruction to disregard been given. Younger Bros. v. Myers, 159 Tex. 585, 324 S.W.2d 546 (1959); Goforth v. Alvey, 153 Tex. 449, 271 S.W.2d 404 (1954). We overrule appellants' second and third points.

Appellants' fourth point states that in jury argument counsel for appellees disclosed to the jury the effect of their answers to the special issues. Appellees' attorney told the jury that "issues one through nine are our issues, ten through fifteen are their issues and sixteen through eighteen are the damage issues. I suggest that one through nine should be answered 'We do' and I also want to call your attention to Issue No. 10 as to whether or not Mr. Johnson kept a lookout for traffic along Farm Road 528. This is the whole basis of this case, what it comes down to and what you are going to have to decide." He also asked that each issue be considered carefully, said that all are important and that ten through fifteen are very important—"I can't tell you how important."

He asked that the jury not "stamp contributory negligence on Johnny Johnson."

No objection was made to the argument and no instruction was requested, but a motion for mistrial was made at its conclusion.

 Once the charge has been completed, it is the court's charge, and issues should not be referred to as "ours" or "theirs". As pointed out, however, in Texas & New Orleans Railroad Co. v. Perez, 346 S.W.2d 369 (Houston Tex.Civ. App.1961, writ ref., n. r. e.), that counsel may beg the jury to answer certain issues "yes" and others "no" in keeping with the evidence, if he does not tell the jury that the answers he begs would result in a judgment for his client, citing Texas & N. O. R. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160 (1937).

 Appellee failed to relate his plea for findings to the evidence, but we hold that it did not ask for answers on the basis of producing a specific result and thus inform the jury as to the effect of its answers.

Further, the argument in question could have been cured by an appropriate instruction from the court if a timely objection had been made. Rules 434 and 503, Vernon's Rules of Civil Procedure; Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (1953). We overrule the fourth point.

Appellants' fifth through eighth points complain of the refusal by the trial court to submit four issues inquiring as to whether 1) decedent was crossing a part of the highway at a point other than within a marked or unmarked crosswalk, 2) if so, did he fail to yield the right-of-way to the pickup truck, 3) if so, was such action negligence and 4) if so, was such negligence, if any, a proximate cause of the occurrence in question.

The definition of a crosswalk is found in Article 6701d, Sec. 15(a), Vernon's Texas Statutes: "That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs, or in the absence of curbs from the edges of the traversable roadway; (b) Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrial crossing by lines or other markings on the surface."

Sec. 78(a), Vernon's Texas Statutes, provides: "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the highway."

Sec. 24(d) of Article 6701d states: "The provisions of this Act shall not apply to persons, teams, motor vehicles, and other equipment while actually engaged in work upon the surface of a highway but shall apply to such persons and vehicles when traveling to or from such work." We find no Texas cases applying this Section, but its wording is clear, and we note that even in the absence of such a statute other states require a lesser standard of care for those actually engaged in work upon the surface of a roadway than that re-

quired for ordinary pedestrians. "While a construction or maintenance worker engaged in the performance of tasks in the street or highway cannot utterly disregard the matter of his own safety from passing vehicles, his duty of care or vigilance is not the same as that of an ordinary pedestrian crossing a street or highway." 7 Amer.Jur.2d 935, Automobiles, § 385.

As stated in 5 A.L.R.2d 769: "In a sense, therefore, the majority of the courts have recognized that a worker in the highway has special statutes which must be considered in determining whether he has exercised due care for his own safety. And, in effect, it may be said that the rule is established that a worker is not required to exercise the same degree of care required of an ordinary pedestrian, but need exercise only that care which an ordinarily prudent man, similarly employed in the highway, would and could take to avoid injury by passing vehicles."

We do not suggest that such rule is followed in Texas; we merely note that under the general rule one outside a crosswalk but working upon the surface of a roadway is not required to yield the right-of-way to passing vehicles.

The Supreme Court of Minnesota held in Hockenhull v. Strom Construction Co., 212 Minn. 71, 2 N.W.2d 430 (1942), that such a provision in the Minnesota statute exempts those working on highways from the right-of-way regulations of the act.

Our Sec. 24(d) is not limited to highway construction or maintenance workers, teams, etc., so the fact that the deceased was not engaged in highway work is not controlling.

Further, there is no testimony in the record relating to the presence or absence of a crosswalk or of sidewalks. Three photographs, defendants' exhibits 1, 2 and 4, are the only ones which show the area where sidewalks may, or may not, have been, and they constitute the only possible evidence on the point.

Defendant Don Robert Switzer testified that when he saw E. D. Johnson he was in the middle of F. M. 528 and about ten or fifteen feet west of the intersection with Bayou View Drive. There were other circumstances in evidence from which the jury could have determined that Mr. Johnson's position in the highway was on the west edge of Bayou View Drive.

A sidewalk need not be paved to comply with the definition contained in Sec. 15(a), V.A.T.S. Brabson v. City of San Antonio, 332 S.W.2d 387 (San Antonio Tex.Civ.App., 1960, writ ref., n. r. e.). We hold that there is insufficient evidence in the record to support the submission of the crosswalk issues. The jury could not determine whether at the time of the accident there was or was not an unmarked crosswalk at the place where Mr. Johnson was located when the truck arrived. These points are overruled.

The ninth point of error says the trial court should not have refused appellants' offered issue on unavoidable accident. We overrule this point. We find nothing in the evidence to raise the issue that something other than the negligence of one of the parties (to the event) caused the injuries. The evidence does not raise the issue of unavoidable accident. Dallas Railway & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379 (1952); Texas Textile Mills v. Gregory, 142 Tex. 308, 177 S.W. 2d 938 (1944).

The tenth point of error asserts that the trial court should not have permitted Sgt. Gilmore to read Officer Maynard's statement that Don Robert Switzer had said he was looking to his right and did not see the deceased until he hit him.

Officer Maynard had died before this case came to trial, and the statement in question was read into evidence by

Sgt. Gilmore. Its authenticity was established under Article 3737e, V.A.T.S., the business records exception to the hearsay rule. We hold that the matter was properly admitted for the same reasons as those stated in Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298 (Tex.Sup.1962). The statement was not admissible under Article 3737e, because Officer Maynard did not have the personal knowledge required by Sec. 1(b) of the Article (i. e., as to which way the driver was looking), but he had personal knowledge that the statement was made, and a record of it was made, so the record is admissible under the statute to prove that an admission was made by a party; it is inconsistent with the testimony given by the party and is therefore an admission.

■■■■■ Appellants' last two points state that 1) there was no evidence or insufficient evidence to support the submission of an issue inquiring whether the deceased had kept a proper lookout, and 2) the jury's finding that he kept a proper lookout was so against the great weight and preponderance of the evidence as to be manifestly wrong. These points are also overruled. The defendant who was driving the truck testified that the deceased was running when he was struck. This is a circumstance from which the jury could decide that he was keeping some degree of lookout. We hold that when this evidence is considered along with the presumption that a deceased person exercised ordinary care for his own safety, this constitutes sufficient evidence to support the jury's finding despite the testimony of a witness called by appellees who testified that he saw Mr. Johnson straighten up from a bending position when the truck was only ten or fifteen feet from him, that Mr. Johnson was looking in a northerly direction (not east, the direction of the truck's approach), and that he never did give any indication that he saw the truck.

The judgment of the Trial Court is affirmed.