**Affirmed and Majority and Dissenting Opinions filed August 4, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00343-CV

## VINCENT LILLY, Appellant

## V.

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE AND BILL PIERCE, Appellees

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 74682I**

## D I S S E N T I N G   O P I N I O N

Summary judgment was not proper. In Lilly's first and second issues, he asserts the trial court erred in granting summary judgment in favor of the Texas Department of Criminal Justice and Bill Pierce (hereinafter the "Prison Parties") because they did not prove Lilly's claims are time-barred. The majority affirms the summary judgment on a ground not asserted in the motion. No ground in the Prison Parties' summary-judgment motion supports their entitlement to summary judgment. Therefore, this court should reverse, not affirm.

The Prison Parties moved for summary judgment based on the affirmative defense that Lilly's claims are barred by the applicable statute of limitations. As the ones asserting limitations in a summary-judgment motion, the Prison Parties bore the burden to establish the defense.[1] To prevail, they were required to (1) prove conclusively when Lilly's claims accrued, and (2) negate the discovery rule, if it applied and had been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when Lilly discovered, or in the exercise of reasonable diligence should have discovered, the nature of his injury.[2] If, and only if, the Prison Parties were to establish that the statute of limitations bars the claims, would it fall to Lilly, as the non-movant, to adduce summary-judgment proof raising a fact issue to avoid summary judgment based on the statute of limitations.[3] Simply stated, the Prison Parties had to prove their affirmative defense conclusively, including the date on which limitations commenced.[4] They did not do it.

## Texas Government Code Section 501.008(d)(2)

In their summary-judgment motion, the Prison Parties assert that tolling of the limitations period for Lilly's claims stopped on June 24, 2011, the date Lilly received a response to his Step Two grievance from Bill Pierce, the Director of the Chaplaincy Department. Thus, the Prison Parties assert, the statute of limitations expired for Lilly's Texas Religious Freedom Restoration claim one year later, on June 24, 2012, and the statute of limitations expired for Lilly's section 1983 constitutional claims two years later, on June 24, 2013. Lilly filed suit on October

---

[1] *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 220 (Tex. 2003).

[2] *KPMG Peat Marwick v. Harris Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

[3] *See id*

[4] *See id.*

22, 2013, which the Prison Parties contend is after limitations ran on all of Lilly's claims.

### The Prison Parties' Failure to Prove When Limitations Began to Run

The accrual analysis is central to evaluating a limitations defense. In jumping straight to the tolling inquiry, the Prison Parties miss a crucial step in assessing whether Lilly's claims are time-barred. In their appellate briefing, the Prison Parties do not analyze when the statute of limitations began to run. Nor did they address this essential point in their summary-judgment motion. For the Prison Parties' limitations defense to have merit, the statute of limitations must have begun running at some point before June 24, 2011 (the "Step Two Grievance Response Date"). Lilly filed two grievances before the Step Two Grievance Response Date. Each related to the denial of his request that he be allowed to use the prison's Kosher kitchen.

As a general rule, the statute of limitations begins to run when a claim accrues.[5] A claim accrues at the point facts come into existence that authorize a party to seek a judicial remedy.[6] The statute of limitations began running on Lilly's Texas Religious Freedom Restoration claim the date Lilly knew of, or should have known of, the substantial burden on his free exercise of religion."[7] Likewise, the limitations period for Lilly's section 1983 claim began to run when Lilly became aware he had suffered an injury or had sufficient information to know he had been injured.[8]

---

[5] *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998).

[6] *Id.*

[7] *See* Tex. Civ. Prac. & Rem. Code Ann. § 110.007(a) (West, Westlaw through 2013 3d C.S.).

[8] *See Li v. Univ. of Tex. Health Sci. Ctr. at Houston*, 984 S.W.2d 647, 651 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *Hitt v. Connell*, 310 F.3d 240, 246 (5th Cir. 2002).

Neither the majority nor the Prison Parties has undertaken to examine when Lilly knew or should have known of the alleged substantial burden on his free exercise of religion. Nor have they analyzed when Lilly became aware he suffered the injuries asserted in his petition. The majority assumes Lilly knew of the claim in his petition when he filed his grievance on March 24, 2011 (the "Grievance Filing Date"). But, the Prison Parties did not conclusively prove in their summary-judgment motion that the injuries about which Lilly complains in his petition stem from the same conduct that caused Lilly to file the March 2011 grievance. Lilly complains of a variety of actions and decisions spanning the course of two years.

The Prison Parties erroneously assert that all of Lilly's grievances after the Grievance Filing Date are duplicative of the March 2011 grievance, in which Lilly complained that he had been denied access to the prison's Kosher kitchen. In later-filed grievances Lilly complained of different conduct and asserted different claims, including the following complaints:

- Lilly was not allowed to use his commissary-purchased eating utensils in the dining hall.
- The Religious Practice Committee refused to explain its rationale for denying Lilly access to the Kosher kitchen.
- The policy of allowing Jewish inmates access to the Kosher kitchen, but denying access to Lilly (a member of a different religious faith but who observes the same dietary restrictions as a religious practice) violated the Equal Protection clause of the United States Constitution.

Lilly's subsequent grievances address different actions taken by the Prison Parties, and the grievances also express different complaints about those actions.

On appeal, Lilly posits that he did not know whether or not he had non-frivolous claims under the Texas Religious Freedom Restoration Act and the First Amendment to the United States Constitution because he did not know the Prison Parties' rationale for the denial of his requests. Without knowing the Prison

4

Parties' reasons for denying his requests, Lilly could not determine whether the Prison Parties had a purely secular reason for the denials.[9] Although Lilly, at times, phrases this argument as one sounding in fraudulent concealment, the essence of his argument is that the operative facts giving rise to his claims did not occur until he realized that the Prison Parties had no rationale for denying his request to use the Kosher kitchen.[10] Neither the Prison Parties nor the majority addresses this complaint.

The Prison Parties had the burden of conclusively proving when the statute of limitations began to run on Lilly's claims. Absent proof of this crucial element, they cannot establish the affirmative defense of limitations. The Prison Parties did not meet their burden of proving when Lilly's claims accrued.[11] Indeed, they did not even undertake the accrual analysis necessary to get the requested relief. The failure makes summary judgment improper. For this reason alone, the trial court's judgment should be reversed.

### *Failure to Prove When the Tolling of the Statute of Limitations Stopped*

Even presuming for the sake of argument that the statute of limitations began running on Lilly's claims on the Grievance Filing Date, the Prison Parties admit the statute of limitations was tolled for some period of time during the grievance process. The Prison Parties contend in their summary-judgment motion that the tolling stopped on the Step Two Grievance Response Date.

Texas Government Code Sections 501.008(d) and (e) prevent an inmate

---

[9] Lilly makes this point on page fourteen of his appellate brief.

[10] *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (noting that the statement of an issue includes every subsidiary question that is fairly included).

[11] *See Provident Life and Acc. Ins. Co.*, 128 S.W.3d at 220; *LTD Acquisitions, LLC v. Cook*, No.04-10-00296-CV, 2011 WL 61634, at *2 (Tex. App.—San Antonio Jan. 5, 2011, no pet.) (mem. op.).

from filing a claim in state court regarding operative facts for which the Texas Department of Criminal Justice grievance system is the exclusive administrative remedy until either the inmate receives a written decision from "the highest authority provided for in the grievance system" or 180 days pass.[12] Under Texas Government Code Section 501.008(d):

> An inmate may not file a claim in state court regarding operative facts for which the grievance system provides the exclusive administrative remedy until:
>
> (1) the inmate receives a written decision issued by the highest authority provided for in the grievance system; or
>
> (2) if the inmate has not received a written decision described by Subdivision (1), the 180th day after the date the grievance is filed.[13]

The applicable statute of limitations is tolled, however, under section 501.008(e) once an inmate files a grievance.[14] The tolling stops "after the 180th day after the date the grievance is filed" or the date the inmate "receives a written decision issued by the highest authority provided for in the grievance system."[15]

In its summary-judgment motion, the Prison Parties imply the written communication Lilly received in response to his Step Two grievance is a written decision from the highest authority. Yet, the written communication Lilly received advised him that his Step One grievance was "answered appropriately" and his request was scheduled for review by the Religious Practice Committee. In response to Lilly's Step One grievance, the warden wrote that to address Lilly's concerns appropriately, Lilly's request had been forwarded to the Religious Practice Committee. The Prison Parties do not provide any explanation for how the response from Bill Pierce could be a written decision issued by the highest

---

[12] *See* Tex. Govt. Code Ann. §§ 501.008(d), (e) (West, Westlaw through 2013 3d C.S.).
[13] *Id.* § 501.008(d).
[14] *Id.* § 501.008(e)(1).
[15] *Id.* § 501.008(e).

authority when Pierce's "decision" is that he had forwarded Lilly's request to another body for resolution. Accordingly, the Prison Parties did not meet their burden of conclusively proving that Pierce's communication was a written decision from the highest authority in the grievance system.[16]

In sum, the Prison Parties did not prove when the statute of limitations began running or when the tolling of the limitations period stopped. The majority asserts Lilly did not brief this argument. Lilly's appellate briefing shows otherwise. In his appellant's brief, Lilly sought "review of the trial court's Final Judgment granting summary judgment [and] dismissing his case in its entirety with prejudice [because his claims are] barred by [the] applicable statute of limitations." Lilly's first issue presented is "Whether [t]he [n]on-[f]inal [r]esponse [to Lilly's] Step [Two] Grievance [s]tarted [t]he [s]tatute of [l]imitations [r]unning?" Under that issue, Lilly states:

> As a general rule, a cause of action[,] and the statute of limitation[s] begins to run when facts come into existence that authorize a party to seek a judicial remedy. Since [the] plaintiff is confined in the T[exas] D[eparment] [of] C[riminal] J[ustice], [the] Texas Government Code . . . mandate[s] that he seek his judicial remedy after he receives a written decision from the highest authority provided for in the grievance system. . . . The highest authority provided for in the TDCJ Grievance System to decide "religious practice issues" is the RPC [Religious Practice Committee]. . . . Thus, plaintiff was authorized to seek his judicial remedy since he received the written decision of the RPC . . . Consequently, Plaintiff contends the June 24, 2011 date [Grievance Response Date] is not applicable because the RPC did not issue its decision to [p]laintiff's Step [One] grievance on that date.

In keeping with the Supreme Court of Texas's directive to construe briefing rules liberally,[17] this court ought to conclude that Lilly broadly asserted that the

---

[16] *Id.* § 508.001(d)(1).

[17] *See Perry*, 272 S.W.3d at 587.

trial court erred in granting summary judgment on the Prison Parties' ground that the statute of limitations began running on the Grievance Response Date. The majority's narrow reading of Lilly's appellate challenge is at odds with the high court's command to liberally construe appellate briefing. The supreme court has called us to eschew strict construction in favor of a more forgiving standard so that the right to appellate review is not lost by waiver.[18] Following this liberal-construction directive is especially important when the merits of the case involve allegations that fundamental rights—religious liberties—are being denied. Lilly's appellate briefing, though imperfect, substantially complies[19] and falls within the liberal standard for merits review.[20]

Lilly has challenged the trial court's accrual analysis and the failure of the summary-judgment evidence to show when the statute of limitations began running or when the tolling of the limitations period stopped. In doing so, Lilly has successfully attacked the only ground asserted in the Prison Parties' summary-judgment motion. The Prison Parties did not meet their burden of conclusively establishing that Lilly's claims are barred by limitations.[21]

### Texas Government Code Section 501.008(d)(2)

The majority affirms summary judgment in favor of the Prison Parties, however, because the majority concludes the statute of limitations began running

---

[18] *See id.*

[19] *See* Tex. R. App. P. 38.1(f) (stating, "the statement of an issue or point will be treated as covering every subsidiary question that is fairly included."); Tex. R. App. P. 38.9 (stating, "[b]ecause briefs are meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case, substantial compliance with this rule is sufficient).

[20] *See Perry*, 272 S.W.3d at 587; *Marathon*, 767 S.W.2d at 690.

[21] *Id.* §§ 501.008(d), (e); *Provident Life and Acc. Ins. Co.*, 128 S.W.3d at 220; *LTD Acquisitions, LLC*, 2011 WL 61634, at *2.

again on September 20, 2011, 180 days after the Grievance Filing Date. The majority reaches this conclusion by applying Texas Government Code section 501.008(d)(2), a position not advocated by the Prison Parties. Though the majority disposes of the case on this basis, the Prison Parties did not assert section 501.008(d)(2) applied in their summary-judgment motion, nor did they assert the statute of limitations began running on September 20, 2011. This court cannot affirm the trial court's summary judgment on a ground not stated in the Prison Parties' summary-judgment motion.[22] But, even if the Prison Parties had moved for summary judgment under section 501.008(d)(2), and even if the issue (whether any tolling of the statute of limitations ended in September 2011) were properly before this court, the Prison Parties still would not be entitled to summary judgment because they did not conclusively prove in their motion when the statute of limitations began to run.

---

[22] *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993). Because the Prison Parties did not assert an argument under section 501.008(d)(2) in their summary-judgment motion, Lilly was not required to brief this argument on appeal. *Cf. Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.2d 821, 845 (Tex. App.—Dallas 2014, no pet.).

## *Conclusion*

Because the Prison Parties did not meet their burden of conclusively proving Lilly's claims are barred by the statute of limitations, the trial court erred in granting summary judgment. And the majority errs in affirming it. This court should reverse the trial court's judgment. Because it does not, I respectfully dissent.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally (Boyce, J., majority).